THE HEARST CORPORATION, A CORPORATION, PLAINTIFF AND APPELLANT, v. MORITZ M. ZENOFF, ALSO KNOWN AS MORRY M. ZENOFF, DOING BUSINESS AS BOULDER CITY NEWS, DEFENDANT AND RESPONDENT.

No. 3753

December 2, 1953.                    263 P.2d 583.

C. D. *Breeze,* Las Vegas, Attorney for Plaintiff and Appellant.

*David Zenoff,* Las Vegas, Attorney for Defendant and Respondent.

## OPINION

By the Court, EATHER, C. J.:

This is an appeal from judgment of the Eighth judicial district court of the State of Nevada in and for the county of Clark, from all those portions of the judgment entered on the 21st day of November, 1951, partly in favor of plaintiff and partly in favor of defendant, as hereinafter specified, to-wit: Plaintiff appeals from:

1. That portion of said judgment which awards to plaintiff the sum of one hundred twenty dollars ($120), and no more, on plaintiff's second cause of action,

2. From that portion of said judgment which denies to plaintiff any recovery of damages on plaintiff's third cause of action, and

3. From that portion of said judgment which awards the costs to defendant.

For convenience the parties will be designated herein as plaintiff and defendant respectively.

The plaintiff is the proprietor of a news service known as International News Service. The defendant is the owner and proprietor of a newspaper doing business as Boulder City News.

On September 23, 1948, the parties entered into a written agreement whereby plaintiff undertook to furnish to defendant its seven-night leased wire report delivered by printer telegraph machine for the period of five years after September 30, 1948, for an agreed consideration of $60 a week.

Subsequently at the request of the defendant the contract was suspended to September 1, 1949, it being agreed that the period of suspension was to be added to the original term of the agreement. Upon expiration of the period of suspension, plaintiff attempted to reinstall the service and was prevented from doing so by defendant, whereupon this action was brought.

Plaintiff alleged three causes of action. There is no issue as to the first. The second and third were as follows:

2. For a balance of $540 alleged to be due for news service actually furnished by plaintiff to defendant prior to suspension of its contract. Plaintiff alleged that the service was furnished by it to defendant from September 30, 1948 to January 22, 1949, a period of 16½ weeks. However, defendant contended that service was suspended about the first of December, 1948, thereby shortening the period to 9½ weeks, and the trial court computed the balance due on that basis and allowed plaintiff judgment for $120 plus interest at the rate of 7 percent per annum from December 1, 1948. Plaintiff appeals from this judgment.

3. Plaintiff alleged damages in the sum of $3,917.91 being the gain or profit it would have realized at the rate of $16.09 per week for 243½ weeks, the balance of the term of five years specified in the agreement dated September 23, 1948, after deducting the period of 16½ weeks during which it was alleged the service was actually furnished, had defendant permitted plaintiff to perform its contract to the end of the specified term.

The trial court found that service was furnished for only 9½ weeks before it was suspended at defendant's

request; that resumption of service was prevented by defendant; that plaintiff, therefore, was entitled to all the benefits it would have obtained had the agreement been fully performed by both parties; and that plaintiff's method of computing its cost of performing its contract was proper. Plaintiff's cost of performing its contract was established at $43.91 per week, resulting in a gain or profit to plaintiff of $16.09 per week out of the agreed rate of $60 per week to be paid by defendant. The trial court, however, refused to render judgment for plaintiff on its third cause of action, on the ground that there was constructive fraud on its part in negotiating its agreement with defendant, although no actual fraud was shown.

Just prior to the trial, defendant had made an offer of $1,119.80, in settlement of plaintiff's claims, and as the sum of the judgment to plaintiff on its first and second causes of action was less than that amount, the trial court allowed defendant his costs. Plaintiff challenges the trial court's finding of constructive fraud.

Upon the second cause of action, the testimony as to when the suspension of services occurred is conflicting, but there is, we believe, sufficient evidence to support the court's finding that suspension of service occurred about the first of December, 1948. Accordingly, judgment upon that cause of action must be affirmed.

Relative to the third cause of action, the following finding was made by the trial court:

"That at the time the defendant was negotiating with the plaintiff for the news service to be furnished by the plaintiff, the defendant was publishing a daily newspaper and had need of a daily news service; that the publishing of a daily newspaper was at that date on an experimental basis; that the defendant discussed this circumstance with the plaintiff's agent and pointed out to him the possibility that adverse conditions might compel him to resume publication of a weekly newspaper,

thus eliminating the need for a daily news service; that defendant stated that his position at that time necessitated the conditioning of his promise to the plaintiff on his need; that the plaintiff's agent then stated that it would be a 'gamble' for all parties concerned, and encouraged the defendant to give it a 'trial', and assured defendant that the plaintiff would work with him; that the possibility of the defendant being unable to continue a daily publication of his newspaper was discussed at the time of the signing of the agreement, but prior to the actual execution of said agreement."

We have carefully examined the transcript of the testimony, particularly that of defendant and of plaintiff's representative one William Stewart, Jr., who came to Las Vegas and conferred with defendant by telephone upon the negotiation of the agreement in question. Their testimony is substantially in accord; there is no conflict. In many important respects their testimony does not support the quoted finding.

It appears that defendant, who was publishing the Boulder City News as a weekly newspaper, wanted to try publication on a daily basis, notwithstanding the prior owner had been unsuccessful in his attempt to publish it as a daily newspaper. Defendant communicated with International News Service (owned by plaintiff) as he knew that he would have to have daily wire news service for his daily. Stewart was sent to confer with defendant, but appears from the evidence to have been skeptical throughout the transaction and actually discouraged defendant from taking the contract. There was no urging of defendant by Stewart. The situation as disclosed by the evidence was that defendant was trying to get the service, not that Stewart was trying to sell it to him. We can find nothing whatever in the evidence to indicate that Stewart made any effort at all to get defendant to take the contract, but quite the contrary.

There is no evidence whatsoever to support the finding

that defendant "pointed out to [plaintiff's agent] the possibility that adverse conditions might compel him to resume publication of a weekly newspaper, thus eliminating the need for a daily news service; that defendant stated that his position at that time necessitated the conditioning of his promise to the plaintiff on his need." The contract itself was unconditioned in such respect.

The only representation or assurance which can be found made by Stewart to the defendant is the statement, "Well, it looks pretty dark but give it a whirl and we'll see what happens." This can hardly be read to constitute any assurance that if the risk assumed by the defendant did not meet with success the defendant would be relieved of his contractual obligations. The opinion of the court below indicated that it regarded as significant an assurance that the plaintiff "would work with" the defendant, which assurance, if it exists in the record, is only to be found in the quoted statement. We cannot regard this assurance as one to the effect that if attempts to work out an adjustment should fail the defendant would then be relieved of all further responsibility. The only significance of such an assurance would appear to be that efforts would be made to work out any difficulties which might arise. The record would indicate that such efforts were made, to-wit, the suspension of the contract to September 1, 1949. The suspension was accompanied by an express agreement that the period would be extended to the original term of the agreement. Defendant not only agreed to this arrangement at the time, but at the trial expressed himself as being very well pleased with it. So that if plaintiff owed defendant any special consideration on any ground whatever, it appears to have fully discharged its obligation in that regard.

As there is no dispute respecting the amount of plaintiff's damages per week, established at $16.09 per week, and as it has been adjudged that actual service was furnished for only 9½ weeks out of a total of 260 weeks specified by the agreement, it follows that plaintiff's

damages are $16.09 per week for 250½ weeks, or $4,030.54.

The judgment appealed from is affirmed as to plaintiff's second cause of action, and is reversed as to plaintiff's third cause of action. The cause is remanded to the lower court with instructions that judgment be entered for plaintiff on its third cause of action in the sum of $4,030.54, with costs to plaintiff in both courts.

MERRILL and BADT, JJ., concur.